(Docket Entry No. 14)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**


```
                                   :
SHERYL CHAFIN,                     :
                                   :
          Plaintiff,               :    Civil No. 06-836 (RMB)
                                   :
          v.                       :    OPINION
                                   :
DELAWARE RIVER AND                 :
BAY AUTHORITY,                     :
                                   :
          Defendant.               :
_____   :
```

Appearances:

> F. Michael Daily, Jr.
> Sentry Office Plaza
> 216 Haddon Avenue
> Suite 100
> Westmont, NJ 08108
>      Attorney for Plaintiff, Sheryl Chafin

> Sean M. Beach
> The Brandywine Building
> 1000 West Street
> P.O. Box 391
> Wilmington, DE 19899-0391
>      Attorney for Defendant, Delaware River and Bay
>      Authority

**BUMB**, United States District Judge:

This matter comes before the Court upon a motion for

judgment on the pleadings by Defendant Delaware River and Bay

Authority ("DRBA" or "Authority"), a bi-state agency created by

New Jersey and Delaware to operate crossings between the two

1

states.

Plaintiff, Sheryl Chafin, filed a complaint against the DRBA alleging state common law claims of breach of contract, breach of covenant of good faith, and fraud in connection with her employment termination.  The Authority contends that, as an interstate entity, it is immune from suit under state law. Specifically, the Authority argues that because the enacting agreement between New Jersey and Delaware to wit, the Compact, described more fully below, does not provide for liability under state law the Authority is immune from suit.  Chafin responds that the Compact does expressly provide for state law liability. For the reasons discussed below, Defendant's motion will be denied.

This Court is called upon to interpret the interstate Compact between New Jersey and Delaware.  The interpretation of an interstate compact that has been consented to by Congress is a federal question.  <u>Cuyler v. Adams</u>, 449 U.S. 433, 438 (1981). Accordingly, jurisdiction in this Court is proper under 28 U.S.C. § 1331.

I.   <u>Legal Standard</u>

Defendant DRBA moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).  Rule 12(c) provides:

> **Motion for Judgment on the Pleadings.** After the pleadings are closed but within such time as not to

2

delay the trial, any party may move for judgment on the
pleadings. If, on a motion for judgment on the
pleadings, matters outside the pleadings are presented
to and not excluded by the court, the motion shall be
treated as one for summary judgment and disposed of as
provided in Rule 56, and all parties shall be given
reasonable opportunity to present all material made
pertinent to such a motion by Rule 56.

The standard for review of a plaintiff's complaint under Rule
12(c) is identical to that under Federal Rule of Civil Procedure
12(b)(6). See Fed. R. Civ. P. 12(h)(2); see also, Turbe v. Gov't
of the Virgin Islands, 938 F.2d 427, 428 (3d Cir.1991).
"Dismissal of a complaint pursuant to Rule 12(b)(6) is proper
'only if it is clear that no relief could be granted under any
set of facts that could be proved consistent with the
allegations.'" Hackensack Riverkeeper, Inc. v. Del. Ostego
Corp., 450 F. Supp. 2d 467, 484 (D.N.J. 2006) (quoting Hishon v.
King & Spalding, 467 U.S. 69, 73 (1984)).  The allegations
contained in the complaint will be accepted as true.  Cruz v.
Beto, 405 U.S. 319, 322 (1972).  Plaintiff will also be "given
the benefit of every favorable inference that can be drawn from
those allegations." Schrob v. Catterson, 948 F.2d 1402, 1405 (3d
Cir. 1991).  However, the plaintiff must make factual allegations
and cannot rely on "conclusory recitations of law." Pennsylvania
ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 179 (3d Cir.
1988).

     The parties have submitted several attachments to their
pleadings and submissions.  When a court considers matters

3

outside the pleadings it should convert the motion to a motion
for summary judgment to provide the opposing party an opportunity
to respond.  <u>Cortec Indus., Inc. v. Sum Holding L.P.</u>, 949 F.2d
42, 47 (2d Cir. 1991).  However, a court "may consider an
undisputedly authentic document that a defendant attaches as an
exhibit to a motion to dismiss if the plaintiff's claims are
based on the document."  <u>Pension Benefit Guar. Corp. v. White
Consol. Indus.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993).  "When a
complaint relies on a document . . . the plaintiff obviously is
on notice of the contents of the document, and the need for a
chance to refute evidence is greatly diminished."  <u>Id.</u> at
1196-1197 (citing <u>Cortec</u>, 949 F.2d at 48).

　　　Accordingly, this Court's consideration of the Authority's
Compact will not change the applicable standard of review.


II.  <u>Analysis</u>

　　A.  <u>The Compact</u>

　　　Defendant, Delaware River and Bay Authority, is a product of
a Congressionally approved compact between the states of New
Jersey and Delaware.  The Delaware-New Jersey Compact
("Compact"), and thus the DRBA, was created when Congress granted
its approval to the agreement previously enacted into legislation

by both New Jersey and Delaware.[1]  <u>See</u> Pub. L. No. 87-678, 76 Stat. 560; N.J. Stat. Ann. § 32:11E-1 (1990); and Del. Code Ann. tit. 17, § 1701 (2006).  There are two principal consequences of the Compact: through the Compact both New Jersey and Delaware surrendered a degree of sovereignty over their territory that is within the DRBA's purview; concomitant with that surrender of sovereignty, the Compact grants the Authority enumerated powers and obligations over the common border.

The Compact, which the New Jersey Legislature has codified at N.J. Stat. Ann. § 32:11E-1, and which the Delaware Legislature has codified in identical form at Del. Code Ann. tit. 17, § 1701, contains twenty-two Articles that govern the DRBA in its operations.

Article IV describes the DRBA as "a body politic . . . which shall constitute an agency of government of the State of Delaware and the State of New Jersey."  Under Article V the Authority is governed by a commission of twelve commissioners.  The general

---

[1]     The approval of Congress is mandated by what has been referred to as the Compact Clause of the Constitution, though the clause addresses much more than just compacts between the states. In its entirety, that clause reads:

> No State shall, without the consent of Congress, lay any Duty of Tonnage, keep Troops, or Ships of War in time of Peace, enter into any Agreement or Compact with another State, or with a foreign Power, or engage in War, unless actually invaded, or in such imminent Danger as will not admit of delay.

U.S. Const., art. 1, § 10, cl. 3.

powers of the Authority are set forth in Article VII.  Article
VIII provides three means for expanding the Authority's powers
and obligations.  The other Compact provision of relevance in
this matter is Article XV, which provides for jurisdiction in the
state courts of Delaware and New Jersey "to review any bylaw,
rule, regulation, order or other action of the authority . . . ."

B.  <u>Factual Background</u>

Plaintiff Sheryl Chafin began her employment for the
Authority approximately twenty-five years ago.  Over the course
of her employment Chafin was elevated from secretary to Director
of Education and Training.  In this, her last position with the
Authority, Chafin was responsible for management of the training
and educational programs for the Authority's five-hundred plus
employees.  As Director, Chafin initially reported to the
Authority's Chief Operating Officer, Jeff Lewis.  The management
structure was altered and Chafin was to account to the
Authority's Chief Financial Officer, Brad Hopkins.  This too was
changed and at the time of her dismissal Chafin reported to the
Human Resources Officer, Trudy Spence-Parker.  Until the series
of events that led to her dismissal Chafin had never been the
subject of any disciplinary action.

It appears that Chafin and her newest supervisor, Spence-
Parker, had several disagreements over policies and procedures.
Most relevant is Spence-Parker's criticism of Chafin's policies

on educational benefits.  The Authority operated an Educational
Assistance Program ("EAP") that gave employees an annual benefit
of up to $5,250 for educational costs.  This ceiling on
educational benefits allegedly derives from the Internal Revenue
Code which requires income tax to be paid on any benefit beyond
$5,250.  The Authority discovered, through Spence-Parker, that
Chafin had allowed Authority employees, including herself, to
exceed the maximum benefit of $5,250.

Chafin alleges that when these facts came to light a number
of promises were either made or implied.  Chafin relates that at
first, the Authority informed her she would be demoted.  Later,
the Authority offered Chafin an early retirement plan; Chafin
decided to accept this rather than be demoted.  Subsequently,
Spence-Parker told Chafin that she would not be held accountable
for the breach in policy.  Specifically, Chafin alleges, "Spence-
Parker stated that she had done due diligence and realized that
[Chafin] was not in control of the situation and was not
responsible, as the current policies and procedures needed to be
corrected and revised." (Chafin Compl. at ¶ 17).  In reliance on
this information, Chafin decided not to retire.  However, in
February 2004, the education benefits violations were raised
again.  Chafin protested that benefits in excess of $5,250 had
been approved by Authority management in the past.

Nonetheless, the Authority dismissed Chafin later that

month.  The grounds for dismissal included: violation of rules
and regulations; neglect or failure to perform duties; and
dishonesty in any form.  This latter charge was added on an
allegation that Chafin altered the Authority's EAP records.

Chafin requested a review of her termination.  The Authority
convened a hearing before the Authority's Personnel Committee and
that body concluded that Chafin was dismissed for "good and
sufficient cause."  Chafin appealed that decision to the
Personnel Committee of the Authority's Board of Commissioners,
which affirmed the dismissal.  Chafin then brought suit in state
court.  The Authority removed the suit to this Court and moved
for judgment on the pleadings.


III. <u>DRBA's Motion</u>

The Authority moves for judgment on the pleadings arguing
that Plaintiff cannot bring the contract claims she alleges in
her Complaint.  The Authority argues that as a bi-state agency
created by interstate compact it cannot be held liable under the
law of one of its member states unless the Compact expressly
authorizes such application.  The Authority notes that all of its
powers and duties are set forth in the Compact, and argues that
the Compact is silent on whether State law applies to its
employment decisions.  Therefore, the Authority argues, since the
Compact does not expressly provide for the application of state

8

law to the Authority's employment decisions, Chafin cannot bring
a claim under the common law of New Jersey.

The Third Circuit recently addressed the application of
state law to interstate entities in International Union of
Operating Engineers, Local 542 v. Delaware River Joint Toll
Bridge Commission, 311 F.3d 273 (3d Cir. 2002) ("Local 542"),
which the Authority contends controls this case.   There,
plaintiffs, an employees' union, invoked the statutory law of
both Pennsylvania and New Jersey to compel the Delaware River
Joint Toll Bridge Commission (the "Commission"), an interstate
commission of those states, to recognize the union as the
representative of the Commission's employees.   Id. at 274-75.
The district court dismissed the suit and the Third Circuit
affirmed.   Id. at 275, 281.   The Third Circuit noted that,
regardless of the similar legislation enacted by each state, the
compact that created the Commission did not provide for amendment
simply "by each state's passing similar legislation."   Id. at
280.   Further, the court found that principles of federalism and
state sovereignty require an express intention to amend an
interstate compact.   Id. at 281.   "A bi-state entity, created by
compact, is 'not subject to the unilateral control of any one of
the States that compose the federal system.'"   Id. (quoting Hess
v. Port Auth. Trans Hudson Corp., 513 U.S. 30, 42 (1994)).

Contrary to the Authority's position that Local 542 is

9

squarely on point, this Court finds that three important distinctions exist between Local 542 and the instant case.  In Local 542 the compact was silent on the application of state law, id. at 280; here, Article XV expressly provides for the application of state law.  Second, in Local 542 the compact did not contain any provision for amendment, id. at 279; here, there is such a provision contained in Article VIII.  Finally, in Local 542 the issue was whether the subsequent state legislation amended the compact, id. at 280; here, plaintiff seeks to apply the common law.

The paramount distinction is the Compact's Article XV which provides for the application of state law to the Authority and permits judicial proceedings to review any action of the Authority.  Article XV reads, in part:

> ARTICLE XV.   Review and Enforcement of Rules
>
> Judicial proceedings to review any bylaw, rule, regulation, order or other action of the authority or to determine the meaning or effect thereof, may be brought in such court of each state, and pursuant to such law or rules thereof, as a similar proceeding with respect to any agency of such state . . . .

By its plain meaning Article XV grants the state courts of New Jersey and Delaware jurisdiction to hear challenges to "action of the authority."  Int'l Union of Operating Eng'rs, Local 68 v. Del. River and Bay Auth., 147 N.J. 433, 442, 688 A.2d 569 (1997) ("Local 68").  Further, by its plain meaning, these challenges may be brought in either New Jersey or Delaware and

10

"pursuant to such law or rule" of such court. See, e.g., Gauntt
Constr. Co. v. Del. River and Bay Auth., 241 N.J. Super 310, 575
A.2d 13 (App. Div. 1990) (applying Article XV and New Jersey
choice-of-law rules to contract claims), and Moon v. Delaware
River and Bay Authority, No. 05-261, 2006 U.S. Dist. LEXIS 7101
(D. Del. Feb. 24, 2006)(applying Delaware law to breach of
covenant of good faith and fair dealing claim).

   At oral argument, counsel for the Authority repeatedly
claimed that Article XV is merely a "sue and be sued" provision
and disputed that Article XV confers any substantive rights.
Yet, the DRBA cited no controlling authority for that
proposition.  DRBA's position is in conflict with the express
plain language of Article XV that "[j]udicial proceedings to
review any . . . action of the authority . . . may be brought in
such court of each state, and pursuant to such law or rules
thereof . . . ."  See, Landreth Timber Co. v. Landreth, 471 U.S.
681, 685 (1985) ("It is axiomatic that [the] starting point in
every case involving construction of a statute is the language
itself." (internal quotation marks omitted)), Wilson v. U.S.
Parole Comm'n, 193 F.3d 195, 198 (3d Cir. 1999) ("A statute,
clear and unambiguous on its face, will not be interpreted by a
court . . . ."), and Kimmelman v. Henkels & McCoy, Inc., 108 N.J.
123, 128, 527 A.2d 1368 (1987) ("Where a statute is clear and
unambiguous, a court should give the statute its plain

meaning."). Moreover, New Jersey has entered into other compacts which do, in fact, contain "sue and be sued" provisions. Such provisions do not mirror or even simulate Article XV. See, e.g., N.J. Stat. Ann. § 32:3-5(b) and 36 Pa. Stat. Ann. § 3503, Article IV(b) (2006) (stating only power "[t]o sue and be sued" in an agreement between New Jersey and Pennsylvania to create the Delaware River and Port Authority), and N.J. Stat. Ann. § 32:8-3(b) and 36 Pa. Stat. Ann. § 3401, Article II(b) (2006) (stating only power "[t]o sue and be sued" in an agreement between New Jersey and Pennsylvania to create the Delaware River Joint Toll Bridge Commission).

Finally, Article XV states that proceedings can be brought against the DRBA "as a similar proceeding with respect to any agency of such state . . . ." This provision permits Chafin's contract claims. First, the DRBA "constitute[s] an agency of . . . the State of New Jersey." N.J. Stat. Ann. § 32:11E-1, Article IV. Second, New Jersey, to wit, the DRBA, has "waive[d] its sovereign immunity from liability arising out of an express contract or a contract implied in fact . . . ." N.J. Stat. Ann. § 59:13-3. Accordingly, construing the plain meaning of Article XV, because New Jersey permits its agencies, here the DRBA, to be sued on contract claims, Chafin may bring the instant claims against the DRBA.

Additional differences exist between the DRBA's Compact and

the one under review in <u>Local 542</u> that reinforce the conclusion

that <u>Local 542</u> does not control.  Specifically, in <u>Local 542</u> the

compact did not contain any provision for amendment.  Here,

Article VIII of the Compact provides a mechanism for both

increasing the Authority's powers and its duties, and does so in

a manner consistent with <u>Local 542</u>'s concern with principles of

federalism and sovereignty:

> Article VIII.  Additional Powers
>
> For purposes of effectuating the authorized purposes of
> the authority, additional powers may be granted to the
> authority by legislation of either State without the
> concurrence of the other, and may be exercised within
> such State, or may be granted to the authority by
> Congress and exercised by it; but no additional duties
> or obligations shall be undertaken by the authority
> under the law of either State or of Congress without
> authorization by the law of both States.

This Compact article reflects the compromise inherent in

interstate compacts, and <u>Local 542</u>'s concern with the integrity

of sovereignty.  Interstate compacts are a unique contract

between at least three separate sovereigns.  On the definite

terms embodied in the Compact, each party - at least two states

and Congress - has surrendered a degree of sovereignty and

control over a subject within its exclusive purview.  The result

is an entity confined by those terms.  Here, New Jersey and

Delaware have surrendered their sovereign right to exclusive

control over certain parts of their territory so that the

Authority may operate crossings for the betterment of both

states.  Congress has, in turn, approved the Compact and has
surrendered to a degree its otherwise exclusive control over that
interstate conduct.  The terms of that surrender of sovereignty
cannot be altered without agreement from all the parties.  Local
542 holds that the new entity - the Authority - in which the
surrendered sovereignty has been reposed cannot be imposed on
without imposing on the sovereignty of the other parties.  311
F.3d at 280.  That imposition can only be by consent, "expressed
in terms too plain to be mistaken."  Id. at 276 (quoting
Jefferson Branch Bank v. Skelly, 66 U.S. 436, 446 (1861)).
Conversely, a party to a compact can unilaterally secede more
power to the bi-state entity.  But only such power as the
sovereign possesses.  This is the root of Local 542's concern
that "[a] bi-state entity, created by compact, 'is not subject to
the unilateral control of any one of the States that compose the
federal system.'"  311 F.3d at 281 (quoting Hess, 513 U.S. at
42).

This is exactly the scheme set out in Article VIII.  In Local
542 the compact contained no provision for amendment, thus even
identical legislation passed by both member states could not be
applied to the bi-state entity because that would alter the terms
under which each party agreed to surrender a degree of
sovereignty.  Article VIII's terms, however, expressly permit
additional powers unilaterally "by legislation of either State

14

without the concurrence of the other, and may be exercised within such State"; or additional duties bi-laterally "with[] authorization by the law of both States."  Whether complimentary and parallel law in both member states is sufficient authorization under Article VIII is unclear.  Local 542 suggests that such legislation would be insufficient.  To be sure, the Third Circuit, in distinguishing the New Jersey Supreme Court's opinion in Local 68, noted that the DRBA's "compact did not clearly authorize modification through legislation 'concurred in' by both states . . . ."  311 F.3d at 279.  Article VIII's plain language speaks of authorizing legislation, not concurrent legislation.  To authorize is a more express approval than to concur.  Nonetheless, this provision differs from the compact in Local 542 that did not provide for amendment at all.  Id. at 279.  Accordingly, while Article VIII's terms demonstrate that Local 542 does not control this case, the principles and reasoning of Local 542 guide this Court's resolution of the ultimate question.  A resolution that this Court finds is consistent with Local 542.

The final distinction between the instant case and Local 542 is the nature of the claims brought.  Namely, in Local 542 plaintiffs sought to hold the Commission to a statutory duty enacted subsequent to the bi-state commission's creation.  Here, Chafin asserts that the Authority had a contractual obligation as defined by the common law.  In section f of the Compact's Article

15

VII, the Authority is empowered to enter into contracts with individuals.  N.J. Stat. Ann. § 32:11E-1.  It would be a perverse rule of law if the authority was empowered to enter into contracts without being held accountable under the law of contracts.  Here, Chafin alleges the Authority, through its agents, made and breached an oral contract on which she relied to her detriment.  It would stand to reason that the Authority may be called to answer for that alleged breach.

IV.  <u>Conclusion</u>

For the foregoing reasons, Defendant's motion is denied.  An appropriate Order will issue this date.

<u>s/Renée Marie Bumb</u>
RENÉE MARIE BUMB
United States District Judge

Dated:<u> December 20, 2006</u>