[Dkt. No. 52]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

SHERYL CHAFIN,

                Plaintiff,

    v.

DELAWARE RIVER AND BAY
AUTHORITY,

                Defendant.

Civil No. 06-0836 (RMB)

**OPINION**

APPEARANCES:

F. Michael Daily, Jr.
Amy B. Sunnergren
Sentry Office Plaza
216 Haddon Avenue, Suite 100
Westmont, NJ 08108
    Attorneys for Plaintiff

Sean M. Beach, Esquire
William W. Bowser, Esquire
Adria Martinelli, Esquire
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building, 17th Floor
1000 West Street
P.O. Box 391
Wilmington, DE 19899
    Attorney for Defendant

**BUMB**, United States District Judge:

## I.  INTRODUCTION

This matter comes before the Court upon Defendant's renewed motion for summary judgment.  Plaintiff, Sheryl Chafin, filed this action against her former employer, Defendant Delaware River

1

and Bay Authority ("DRBA") after she was terminated in February
2004.  As explained below, this Court will review the DRBA
Personnel Committee's decision upholding the termination to
determine if it was arbitrary and capricious.


**II.   BACKGROUND**

    **A.   FACTS**

The parties are very familiar with the facts, so the Court
will recite them only briefly.  Plaintiff Sheryl Chafin began her
employment for the DRBA approximately twenty-five years ago.
Over the course of her employment, Plaintiff was promoted from
secretary to Director of Education and Training.  In this
position, Plaintiff managed the training and educational programs
for the DRBA's five-hundred plus employees.  As Director,
Plaintiff initially reported to the Chief Operating Officer, Jeff
Lewis.  However, when the management structure was altered,
Plaintiff reported to the Chief Financial Officer, Brad Hopkins,
and, later, to the Human Resources Officer, Trudy Spence-Parker.

As an employment perk, Defendant operated an Educational
Assistance Program ("EAP") that gave employees an annual benefit
of up to $5,250 for educational costs.  This ceiling on
educational benefits was allegedly derived from the Internal
Revenue Code, which requires income tax to be paid on any benefit
beyond $5,250.  In 2004, Spence-Parker discovered that Plaintiff

had allowed DRBA employees, including herself, to exceed the
maximum benefit of $5,250.  Plaintiff argued that prior
management had give her approval to exceed the $5,250 limit.
However, Defendant terminated Plaintiff for violation of rules
and regulations, neglect or failure to perform duties, and
dishonesty in any form.

Plaintiff requested a review of her termination and, thus, a
hearing was held before the Personnel Committee (the "Committee")
on July 1, 2004.  The Committee concluded that Plaintiff was
dismissed for "good and sufficient cause."  Plaintiff appealed
that decision to the DRBA Commissioner's Personnel Committee
("CPC"), which also affirmed the dismissal.[1]  Plaintiff then
filed a complaint in state court.

**B.   PROCEDURAL BACKGROUND**

Plaintiff originally filed this action in state court on
September 13, 2005, and Defendant removed it to federal court six
months later.  In her Complaint, Plaintiff alleged three state
common law claims - breach of contract, breach of the covenant of

---

[1] Plaintiff notes that the decision of the Committee "was
upheld, without comment" by the CPC.  (Pl. Opp. at 5).  However,
in a letter dated November 10, 2004, the CPC explained that
"[u]pon consideration of the record of the termination hearing
held on July 1, 2004, the Commissioner's Personnel Committee has
confirmed and upheld the termination decision..."  (Def. Motion,
Appendix, A410).  Thus, the CPC considered the same record and
hearing transcript and came to the same conclusion as the
Committee below.  Accordingly, this Court finds that the CPC did
not make its decision "without comment" but essentially adopted
the Committee's rationale.

good faith, and fraud in connection with her employment termination.  On June 26, 2006, Defendant filed a motion for judgment on the pleadings, arguing that Plaintiff could not bring state law claims against Defendant, a bi-state agency created by an interstate compact, because the compact did not expressly authorize such application.  This Court denied Defendant's motion on December 21, 2006, finding that the compact did not preclude Plaintiff from seeking relief in this Court from the DRBA's final decision.

After discovery was completed and arbitration proved unsuccessful, Defendant filed its first motion for summary judgment on November 11, 2007.  However, the parties' briefs showed that there was some confusion as to the Court's previous decision.  Thus, at oral argument on March 3, 2008, the Court clarified that although Plaintiff was entitled to seek relief in this Court, she was only permitted to have this Court review the Committee's decision; she was not entitled to bring state law claims.  Furthermore, the Court explained, in reviewing the Committee's decision, the Court would apply an "arbitrary and capricious" standard, the general standard employed for court reviews of agency decisions.  Having clarified the legal issues, the Court then granted Defendant the opportunity to file a renewed motion for summary judgment to demonstrate why the Committee's decision was not arbitrary and capricious.  Defendant

4

filed this renewed motion for summary judgment on May 1, 2008 and Plaintiff filed her opposition on May 23, 2008.

## III.  STANDARD OF REVIEW

The federal Administrative Procedures Act requires that an agency's action be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C.A. § 706(2)(A); see also Pennsylvania Federation of Sportsmen's Clubs, Inc. v. Kempthorne, 497 F.3d 337, 347 (3d Cir. 2007).  Under the arbitrary and capricious standard, a court may overturn an agency decision "only if it is without reason, unsupported by substantial evidence or erroneous as a matter of law."  McLeod v. Hartford Life and Acc. Ins. Co., 372 F.3d 618, 623 (3d Cir. 2004).[2]  "The scope of review under this standard

---

[2] The Third Circuit has further instructed that "[j]udicial review in such suits focuses on the agency's decision making process, not on the decision itself."  NVE, Inc. v. Dep't of Health and Human Servs., 436 F.3d 182, 190 (3d Cir. 2006).
In light of this instruction, the Court notes that Plaintiff received all procedural safeguards that were promised to her in the Personnel Manual, including a Committee hearing conducted by a panel as set forth in the Manual.  (Def. Initial Motion for Summary Judgment [Dkt. No. 37] at 24).  During that hearing, Plaintiff was represented by counsel of her own choice and had the full opportunity to present her case.  (Id. at 24-25).  All testimony was presented under oath and the hearing was transcribed by a court reporter.  (Id. at 25).  The Manual further provided for additional review and Plaintiff availed herself of this opportunity by appealing the Committee's decision to the CPC.  (Id.).  Because the DRBA followed the procedures set forth in the Manual, this Court finds that the process was not arbitrary and capricious.

'is narrow and a court is not to substitute its judgment for that
of the agency.'" <u>Kempthorne</u>, 497 at 347 (quoting <u>Motor Vehicle
Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 43
(1983)).  However, the agency must "provide the reasons for its
actions in addition to sufficient factual findings to support
them." <u>Bro-Tech Corp. v. N.L.R.B.</u>, 105 F.3d 890, 894 (3d Cir.
1997) (internal quotations and citation omitted).


**IV.  DISCUSSION**

    **A.  Plaintiff's Arguments**

    Plaintiff argues that the Committee's decision was arbitrary
and capricious for a number of reasons.  First, Plaintiff asserts
that the Committee failed to consider the following factors when
making its decision:  1) the ambiguous nature of the EAP policy;
2) Plaintiff's belief that the policy only stated that the non-
taxable benefit was $5,250; and 3) the fact that payments for
educational benefits were made to schools after courses had
already begun.  (Pl. Opp. at 8).

    Contrary to Plaintiff's assertion, the transcript from the
July 1, 2004 hearing clearly demonstrates that the Committee
considered all of these factors.  In fact, at the hearing,
Plaintiff testified at length in front of the Committee about the
ambiguity of the EAP policy, the historical enforcement problems
of the policy, and the alleged conflict between the policy and

the IRS nontaxable limit:

> Q:   What did you tell [Spence-Parker] – what were
>      these issues and problems that you told her about?
>
> A:   Discrepancies in the actual policy.  The policy
>      itself is very ambiguous.  There are
>      contradictions.  In one section it talks about an
>      IRS limit, but the IRS only established a
>      nontaxable limit.  So there's conflicting stories
>      in the policy.  People had not adhered to the
>      policy, exceptions were made.  So there were a lot
>      of issues with the policy.
>
> ...
>
> Q:   Did you think that the policy was unclear as to
>      the 5,250 limit?
>
> A:   Yes.
>
> Q:   What's unclear about it?
>
> A:   In the policy on the page that states it is a
>      maximum benefit and it was created by the IRS, the
>      IRS states it is a 5,250 nontaxable limit and the
>      Authority's past practice has been to exceed that
>      limit.  In one area of the policy it states a
>      maximum benefit and the next time it is stated a
>      nontaxable limit.  It is inconsistent.

(Hearing Tr.[3] at 189:13-22, 229:13-23; <u>see also</u> 229:24-231:4).

Plaintiff also testified about the timing of payments to schools

and how that created a problem in terms of enforcing the policy:

> Q:   Now, what other problems or issues did you discuss
>      with Ms. Spence-Parker when she came on board?
>
> A:   We get billed after the fact.  When a course
>      starts, say a fall semester, Wilmington College
>      enrolls our employees, they start the course.

-----

[3] The transcript from the July 1, 2004 hearing in front of
the DRBA Personnel Committee can be found in the Appendix to
Defendant's Motion for Summary Judgment.

> They could be partway [sic] through their program
> before we would receive an invoice.
>
> Q:   And how would that create a problem?
>
> A:   If a person was going to go over a 5,250 limit, I
>      typically won't see that until I got the invoice
>      and know exactly what they were enrolled in.

(Id. at 191:8-19).

Moreover, the Committee also heard Plaintiff's testimony
concerning the approval she had received from the former COO,
Jeff Lewis, to exceed the maximum and how she believed this
approval would not be affected by Spence-Parker's new enforcement
policies:

> A:   [Approval to exceed the maximum] came about as a
>      discussion with the chief operating officer, Jeff
>      Lewis, when Mike Scanlon requested to go to the
>      graduate program and I also requested to go into
>      this graduate program and he approved the
>      programs.
>
> ...
>
> Q:   Now, you told us that you discussed the course and
>      the payment and the amount with Mr. Lewis and you
>      went forward on that basis, took the course, bills
>      were paid.  You never mentioned it to Ms. Spence-
>      Parker; is that right?
>
> A:   No.
>
> Q:   Why not?
>
> A:   It didn't come up.  It was an agreement between
>      Jeff Lewis, Mike Scanlon, myself that we were
>      approved for the program.  He was the COO.  He
>      gave his approval to do it and that was it.

(Id. at 208:19-23; 211:1-11).

Thus, all of the factors that Plaintiff asserts were not

8

considered by the Committee were in fact addressed at the hearing in front of the Committee through Plaintiff's own testimony. Accordingly, Plaintiff's argument that the Committee did not consider these factors fails.

Second, Plaintiff theorizes that the DRBA may have offered Plaintiff excess educational benefits "with the expectation that she would not share her knowledge of the past practices and expenditures" while the DRBA was under investigation. (Pl. Opp. at 9). Plaintiff's theory is spurious; it is wholly unsupported by the record and has no place in this Court's review.

Third, Plaintiff contends that the issue of "whether the EAP policy was unclear as a matter of law" is a legal issue that this Court must review subject to a reasonableness standard. (Pl. Opp at 10). In support of this argument, Plaintiff cites a Ninth Circuit decision in which the court held that where the issue on review "is predominantly a legal rather than a factual one ... the applicable standard of review ... is reasonableness." Alaska Wilderness Recreation and Tourism Ass'n v. Morrison, 67 F.3d 723, 727 (9th Cir. 1995).

It appears that the Third Circuit has not addressed this issue in this particular context. However, it has noted that "although '[i]t is generally thought that the "reasonableness" standard of review is "far less deferential" to agency decisionmaking than is the "arbitrary and capricious" standard

9

... the distinction between the two standards tends to blur.'" South Trenton Residents Against 29 v. Fed. Highway Admin., 176 F.3d 658, 663 n.2 (3d Cir. 1999).[4]  Nonetheless, the lack of specific Third Circuit authority does not prevent this Court from resolving this matter.

While Plaintiff may be correct that the legal issue in this case should be reviewed pursuant to a reasonableness standard (as opposed to the arbitrary and capricious standard), this Court finds that the outcome would be the same under either standard. The Committee concluded that the EAP limit of $5,250 was not ambiguous and this Court finds that determination reasonable. The relevant language of the EAP policy states,

> [e]ligible DRBA employees, as defined below, are entitled to a <u>maximum benefit of up to $5,250 per year</u> for education costs to participate in job related college, technical, or corresponding studies programs.

(EAP Policy[5] at 3) (emphasis added).  The Committee found that the EAP limit as set forth in this statement was not ambiguous, and this Court agrees.  Accordingly, the Court concludes that the Committee's determination passes muster under either the arbitrary and capricious standard or the more stringent

---

[4] The Court notes that the <u>South Trenton</u> case, as well as the cases Plaintiff cites, involve the review of environmental decisions, whereas the present case involves the review of an employment decision.

[5] The EAP Policy can be found in the Appendix to Defendant's Motion for Summary Judgment.

reasonableness standard.  See South Trenton, 176 F.3d at 663 n.2
("[b]ecause the reasonableness standard is less deferential to
the agency, it is axiomatic that a 'reasonable' agency decision
would also pass muster under the arbitrary and capricious
analysis").

**B.  Further Support for the Committee's Decision**

Not only do Plaintiff's arguments fail to show that the
Committee's decision was arbitrary and capricious, but the
evidence in the record offers strong support for the Committee's
decision to uphold the termination.  For example, Plaintiff
testified that despite the ambiguity in the policy and historical
enforcement problems, she knew that the $5,250 maximum would be
strictly enforced going forward, yet she failed to abide by the
limit herself:

    Q:  Do you agree that after Ms. Spence-Parker came on
        board she did tell you that this maximum was going
        to be strictly enforced going forward?

    A:  Yes, that the policy would be adhered to, yes, as
        she stated.

    Q:  And following that discussion did you mention to
        her that you had any special arrangement to exceed
        the limit?

    A:  No, I don't think she ever asked.

    Q:  She didn't ask; I understand that.  But did you
        mention it at that time?

    A:  No.

    Q:  You didn't think it would be appropriate to raise
        it then?

```
A:    It didn't come up.  It was an agreement with the
      COO in 2002.

Q:    But she laid down the law and said from here on
      we're going to follow the book?

A:    Right.
```

(Id. at 221:3-21).  Given this testimony, this Court is hard-pressed to find that the Committee's decision to terminate Plaintiff for violation of rules and dishonesty was arbitrary and capricious.  Indeed, it seems that the decision was well-reasoned, as Plaintiff's "silence during this discussion speaks volumes."  (Def. Reply at 6).


**V.  CONCLUSION**

     For the aforementioned reasons, this Court holds that the DRBA's decision to uphold Plaintiff's termination was not arbitrary and capricious.  Accordingly, Defendant's motion for summary judgment is granted.  An appropriate Order will issue this date.


Dated:  June 24, 2008          s/Renée Marie Bumb
                               RENÉE MARIE BUMB
                               UNITED STATES DISTRICT JUDGE